UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| LEE GROUP HOLDING COMPANY, LLC.; LESTER L. LEE; BRENDA R. LEE, DEBRA JO BROWN; MELINDA GABBARD; and LARRY L. LEE, | ) ) ) ) ) ) | 4:15-cv-00009-RLY-WGH |
| Appellants, | ) ) | |
| vs. | ) ) | |
| MICHAEL J. WALRO as Trustee of the Bankruptcy Estate of Lester L. Lee, | ) ) ) | |
| Appellee. | ) ) | |
| In re: LESTER L. LEE, | ) ) ) | 12-900007-JJG-7A |
| Debtor. | ) ) | |
| MICHAEL J. WALRO, as Trustee of the Bankruptcy Estate of Lester L. Lee, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | ADV. PROC. NO. 14-59011 |
| THE LEE GROUP HOLDING COMPANY, LLC; LESTER L. LEE; BRENDA R. LEE; DEBRA JO BROWN; MELINDA GABBARD; AND LARRY L. LEE, | ) ) ) ) ) ) | |
| Defendants. | ) | |

1

## APPEAL FROM THE UNITED STATES BANKRUPTCY COURT

Appellants, the Lee Group Holding Company, LLC, Brenda R. Lee, Debra Jo Brown, Melinda Gabbard, and Larry L. Lee, appeal[1] the Bankruptcy Court's Findings of Fact and Conclusions of Law and its Judgment granting the Trustee's Motion for Summary Judgment and denying the Appellants' [Cross-] Motion for Summary Judgment.  For the reasons set forth below, the court **AFFIRMS** the Judgment of the Bankruptcy Court.

**I.    Statement of Facts**

The undisputed material facts are as follows:

1. On January 3, 2012, the Debtor, Lester L. Lee, filed his voluntary petition for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code.  (R. at 105).

2. The Trustee was appointed as the interim trustee under § 701 of the Bankruptcy Code on the petition date, and in accordance with § 702(d) of the Bankruptcy Code became the permanent trustee following the meeting of creditors held under § 341(a).  Pursuant to 11 U.S.C. § 323 (a), the Trustee is the representative of the Estate with full capacity to prosecute this action.  (R. at 108).

3. Appellant, the Lee Group, is a limited liability company organized and existing under the laws of the State of Indiana, with the Debtor as its Registered Agent.

---

[1] The Debtor did not join in this appeal.

(R. at 105). On the petition date, the Debtor was also the manager of the Lee Group, as set forth in Section 2.1 of the Operating Agreement. (R. at 17, 106).

4. Appellants, Brenda R. Lee, Debra Jo Brown, Melinda Gabbard, and Larry L. Lee are members of the Lee Group. Brenda R. Lee ("Brenda") is the owner of the Lee Group and the wife of the Debtor. (R. at 105). Debra Jo Brown, Melinda Gabbard and Larry L. Lee (the "Lee Children") are their three adult children.

5. At all material times, the Lee Group has been governed by the Fourth Amended Operating Agreement. (R. at 106).

6. On the petition date, Debtor held 51% voting rights with respect to the Lee Group, which were not disclosed in his bankruptcy schedules. (*Id.*).

7. Section 3.1(D) of the Operating Agreement states, in part:

(D) Each member shall have the voting power and a share of the Principal and income and profits and losses of the company as follows:

| Member's Name | Share | Votes |
| --- | --- | --- |
| Debra Jo Brown | 20% | 10 |
| Brenda R. Lee | 40% | 20 |
| Larry L. Lee | 20% | 10 |
| Melinda Gabbard | 20% | 10 |
| Lester L. Lee | 0% | 51 |

(R. at 22).

8. On January 31, 2014, counsel for the Trustee wrote a letter to counsel for the Lee Group, advising that upon reviewing the Operating Agreement in connection with

3

a deposition of the Lee Group, Trustee's counsel became aware of the Debtor's 51% voting rights as a member, and that pursuant to applicable law, "this non-economic interest became property of the estate subject to control of the Trustee on the filing of the petition pursuant to 11 U.S.C. § 541." (R. at 106).

9. After January 31, 2014, Brenda and the Lee Children executed a Resolution of the Members of the Lee Group Holding Company, LLC (the "First Resolution") wherein they purported to accept Debtor's withdrawal from the Lee Group pursuant to Section 3.7 of the Operating Agreement and recognized the immediate termination of his voting rights pursuant to Section 3.5(C) of the Operating Agreement. (R. at 36, 106).

10. The First Resolution also purported to accept the Debtor's resignation of his position as manager of the Lee Group effective December 31, 2013. (R. at 107).

11. On February 17, 2014, Brenda and the Lee Children executed an Addendum to the Operating Agreement. (R. at 37, 106). The Addendum designated Larry Lee as the new manager, redistributed voting rights, and purported to make the Lee Group liable for the members' income taxes resulting from its operations and to impose a lien on the assets of the Lee Group for the purported tax liabilities. (R. at 37).

12. After January 31, 2014, Brenda and the Lee Children also executed a second Resolution of the Members of the Lee Group Holding Company, LLC wherein they agreed that the Debtor would remain with the Lee Group as a "consultant." (R. at 38, 107).

13. On various dates after the petition date, Brenda and the Lee Children purported to consent on behalf of "all members of the Lee Group Holding Company, LLC" to the actions described in the documents attached to the Trustee's Complaint as Exhibits "E," "F," and "G."  (R. at 39-41, 107).

14. The Trustee was not given notice of the post-petition actions noted above prior to the actions being taken.  (R. at 107).

15. The Trustee did not vote with respect to any of the post-petition actions.  (*Id.*).

16. On December 18, 2014, the Bankruptcy Court entered its Findings of Fact and Conclusions of Law (R. at 224-38) and its Judgment (R. at 240-41), granting the Trustee's Motion for Summary Judgment and denying the Appellants' [Cross]-Motion for Summary Judgment.  (R. at 238).  The Bankruptcy Court concluded that the Debtor's voting rights were property of the estate as of the filing of the Petition and that the Appellants' actions purporting to terminate those voting rights violated the automatic stay imposed by 11 U.S.C. § 362 and, therefore, had no legal effect.  (R. at 241).

## II.  Standard of Review

Summary judgment is appropriate if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The court reviews *de novo* a bankruptcy court's grant of summary judgment, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Dick v. Conseco, Inc.*, 458 F.3d 573, 577 (7th Cir. 2006) ("In a second appeal from a bankruptcy court's decision, we apply the same standard of review

as did the district court, which in the case of the bankruptcy court's grant of summary judgment, is de novo.") (internal quotation marks omitted).

### III. Discussion

Appellants raise two arguments on appeal. First, they argue that the facts relied upon by the Trustee in his summary judgment motion were not supported by admissible evidence. Second, they argue the Debtor was not a member of the Lee Group, and that his 51% voting rights arose from his position as manager. Consequently, the Debtor's voting rights were not property of the estate as of the Petition Date.

#### A. The Facts

Appellants' first argument warrants little discussion. The Trustee's Statement of Material Facts Not in Dispute were based on the parties' Joint Pre-Trial Statement and the documents attached to the Trustee's Adversary Complaint, including the Operating Agreement. (R. at 105-07). The Appellants did not challenge these facts. Indeed, in the Appellants' Cross-Motion for Summary Judgment, they relied upon the same documentary evidence submitted to the court by the Trustee. (R. at 169-71). Accordingly, the court rejects the Appellants' request to reverse the judgment of the Bankruptcy Court on that ground.

#### B. Membership in the LLC

Section 541(a)(1) of the Bankruptcy Code defines "property of the estate" broadly as "all legal or equitable interests of the debtor in property as of the commencement of the case." In determining whether the Debtor's voting rights were property of the estate, the court considers the express terms of the Operating Agreement and the relevant

6

provisions of the Indiana Business Flexibility Act, Indiana Code §§ 23-18-1-1, *et seq.* (the "Act"). In this regard, the Act defines a "member" of a limited liability company as "a person admitted to membership in a limited liability company under IC 23-18-6-1 and as to whom an event of dissociation has not occurred." The Act further provides that a person may become a member by "acquiring an interest directly from the limited liability company, upon compliance with the operating agreement or if the operating agreement does not provide in writing, upon the written consent of all members." Ind. Code § 23-18-6-1. And the Act defines "interest" as follows:

> "Interest" means a member's economic rights in the limited liability company, including the member's share of the profits and losses of the limited liability company and the right to receive distributions from the limited liability company.

Ind. Code § 23-18-1-10. With that background in mind, the court turns to the Appellants' arguments.

First, Appellants argue the Debtor could not be a member because he had no ownership or economic interest in the Lee Group. As the Bankruptcy Court observed, the definition of "interest" is not confined to a member's share of the company's profits and losses or its distributions. Rather, it appears to encompass any economic right in the company. Moreover, the Act contemplates that persons can be members without having any economic interest if the operating agreement so provides. For instance, Indiana Code §§ 23-18-6-4(e) and 23-18-6-4.1(e) state that a member ceases to be a member if he assigns his "entire interest" to someone else, "unless otherwise provided in the written operating agreement." Thus, the Act contemplates that a person may assign his entire

7

economic interest to someone else yet remain a member in the company. And further, case law recognizes that membership in a limited liability company may confer both economic and non-economic rights that fall within § 541(a)'s definition of property of the estate. *See, e.g., In re Ellis*, No. 10-16998-AJM-7A, 2011 WL 5147551, *2 (Bankr. S.D. Ind. Oct. 27, 2011).

Even if having economic rights in a company is a prerequisite for membership, the Debtor did receive economic rights through his majority voting rights. For instance, as the holder of majority voting rights, the Debtor could ensure his continued employment as manager, since § 2.4 of the Operating Agreement requires "a majority vote of the members of the company" for removal. In addition, pursuant to §§ 2.5 and 2.6, he had control over the business affairs of the company in which his wife holds a 40% interest, and could receive "incentives and bonuses" as manager approved by the members, as well as indemnification of expenses, legal fees, and liability in any proceeding to which the manager may be named as a party.

The Debtor also received an economic benefit from § 3.8(G) of the Operating Agreement, which states:

> In the event of dissolution of marriage, or notice of a Member of his or her intention to dissolve a marriage (the "Divorcing Member"), the remaining Members, or the LLC, shall have the right to purchase the interest of the Divorcing Member for an amount equal to twenty-five percent (25%) of the book value of the LLC on the 31st day of December of the year immediately preceding the dissolution or notice of intention to dissolve.

Pursuant to this provision, if Brenda were to divorce the Debtor, he could purchase her 40% interest in the company for a 15% discount. The Debtor would have the largest

economic interest of any member, along with majority voting rights. As the Trustee noted at the summary judgment stage, "it would appear this particular economic benefit was uniquely tailored to apply to Brenda Lee's membership interest, since all other members of the company each own 20% ownership shares, and hence the provision to purchase them for 25% of the company's value would impose a premium rather than a discount price." (R. at 188-89, 232-33).

Second, the Appellants find error in Conclusions of Law No. 8, which states:

> Based on the clear and unambiguous terms of § 3.1(D) of the Operating Agreement, the Court concludes that Debtor was a member of the Lee Group as of the Petition Date and that Debtor's voting rights were conferred as an incident to that membership. Contrary to the Defendants' argument, nothing in the Operating Report [sic] supports the Defendants' argument that Debtor's voting rights derived from his role as manager, as the provisions of the Operating Agreement relevant to management make no mention of voting rights.

(R. at 231).

Section 3.1(D) of the Operating Agreement is located in the "Members" section, and provides:

> Each member shall have the voting power and a share of the principal and income and profits and losses of the company as follows:

| Member's Name | Share | Votes |
| --- | --- | --- |
| Debra Jo Brown | 20% | 10 |
| Brenda R. Lee | 40% | 20 |
| Larry L. Lee | 20% | 10 |
| Melinda Gabbard | 20% | 10 |

9

| Lester L. Lee | 0% | 51 |

(R. at 21-22) (emphasis added). As the Bankruptcy Court correctly concluded, the intent of this Section was to define the interests and voting rights of the Lee Group's *members*. Thus, according to § 3.1(D), the Debtor held the majority voting rights with respect to the members of the Lee Group. He held 51 votes, and the other members collectively held 50 votes. Furthermore, after the bankruptcy petition was filed, the members of the Lee Group executed the First Resolution purporting to accept the Debtor's withdrawal from the Lee Group "pursuant to Section 3.7 of the Operating Agreement," which is the section of the Operating Agreement covering "Withdrawal of Members." (R. at 25, 106). Finally, § 3.5(C) of the "Members" section states that "[t]he voting rights of Lester L. Lee shall expire upon his withdrawal from the company or his demise." (R. at 23-24).

Notwithstanding the plain language of § 3.1(D) of the Operating Agreement, Appellants maintain the Bankruptcy Court erred because § 2.1, entitled "Managers," addresses the Debtor's voting rights derived from his position as manager. In support of their position, Appellants refer the court to § 2.1(G) (providing procedures in the event a manager dissents to company action voted on at meeting of managers); § 2.1(K) (stating "the act of the majority of the managers present at any meeting at which there is a quorum shall be the act of the managers"); § 2.1(O) (requiring resolution of majority of managers to obtain loans), § 2.1(P) (requiring approval of majority of managers for company to lend or borrow from manager or member) and § 2.2(E) (replacing managers

"shall be made by the unanimous decision of all other managers or, if there are none, by unanimous consent of all members").

Section 2.1 identifies the Debtor as the sole manager of the company, *see* § 2.1(A) and (B). None of the subparts relied upon by the Appellants purports to give the Debtor voting rights in his role as manager. This makes sense, as the Debtor was the only manager vested with control of the company's business and affairs. Thus, granting him voting rights would serve no purpose. Moreover, the subparts relied upon by the Appellants are inapplicable to the present case, as they presuppose the employment of more than one manager. Accordingly, the court finds Conclusion of Law No. 8 is not clearly erroneous.

Finally, Appellants find error in Conclusion of Law No. 9:

> The Court further notes that according to the [First] Resolution, the Family Defendants[2], in purportedly terminating Debtor's membership in the Lee Group, cited § 3.7 of the Operating Agreement. That section is entitled "Withdrawal of *Members*" (italics added). Furthermore, it appears that Debtor openly acted as a member, as demonstrated by the Signature Page attached to the Operating Agreement. There is nothing in the record to suggest that the Family Defendants ever resisted that action or any other action taken by Debtor as a member.

(R. at 231-32). Appellants argue the Bankruptcy Court erred because "there is nothing to suggest that Debtor acted as a Member" and "[t]here is nothing to suggest he signed the Operating Agreement as a member as opposed to a Manager." (Filing No. 9 at 17). Appellants' argument is belied by the designated evidence.

---

[2] The Bankruptcy Court defined the Family Defendants as Brenda R. Lee, Debra Jo Brown, Melinda Gabbard and Larry L. Lee.

> The Operating Agreement at issue begins by stating:
>
> THIS AMENDMENT to the Operating Agreement of The Lee Group Holding Company, LLC, an Indiana limited liability company (the "LLC"), is made this 4th day of January, 2011, by and among the *Members* of The Lee Group Holding Company, LLC pursuant to § 5.1 of the Operating Agreement.
>
> The *Members* intend this amended operating agreement and the attached certificate of formation to result in the transfer of one member's interest to another member of the Limited Liability Company.

(R. at 16) (emphasis added). In order to amend the Operating Agreement, § 5.1 requires approval "by a vote of the majority of the members." (R. at 27-28). The signature pages for each member – including the Debtor – state that each "executes this agreement for the purpose of withdrawal of a member." (R. at 30-34). That member was Meegan L. Collier, who also signed a signature page "for the purpose of withdrawing as a member . . . ." (R. at 35). The evidence therefore shows that the Debtor signed the amended Operating Agreement along with the other members of the Lee Group as provided in § 5.1, and they collectively approved the withdrawal of Meegan Collier as a member. Accordingly, the court finds Conclusion of Law No. 9 is not clearly erroneous, and that the Debtor's voting rights were property of the estate at the time he filed his bankruptcy petition.

**IV. Conclusion**

Appellants have failed to establish that the Bankruptcy Court erred in granting the Trustee's Motion for Summary Judgment and denying the Appellants' [Cross-] Motion

for Summary Judgment. Therefore, the Bankruptcy Court's Judgment in favor of the Trustee and against the Appellants is **AFFIRMED**.

**SO ORDERED** this 10th day of August 2015.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.